*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FAULKNER, Minors.

UNPUBLISHED
October 23, 2024
10:38 AM

No. 370303
Ingham Circuit Court
Family Division
LC Nos. 20-000320-NA;
　　　　 20-000321-NA;
　　　　 20-000322-NA

Before: CAMERON, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

This case requires us to determine whether the trial court clearly erred by terminating the parental rights of respondent-father to three minor children, ARF, AF, and MMF. The record reflects that petitioner, the Department of Health and Human Services (DHHS), established grounds to terminate respondent-father's parental rights by clear and convincing evidence under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that a preponderance of evidence showed that termination was in the best interests of the children. We disagree with respondent-father's claim that the trial court clearly erred and, therefore, we affirm.[1]

## I. FACTS AND PROCEDURAL HISTORY

In March 2020, the DHHS petitioned the family court to remove ARF, AF, and MMF from the custody of respondent-mother and respondent-father. This was the fourth time the DHHS removed the children from respondents' custody, and the family also had an extensive history of investigations by Children's Protective Services. In the petition, the DHHS alleged that respondent-mother broke ARF's arm when she pushed him down a flight of stairs. At the time, respondent-father had not seen the children since December 2019 after he pleaded no contest to a criminal charge of witness intimidation in exchange for the dismissal of a charge of domestic

---

[1] Respondent-mother released her parental rights to the children and is not a party to this appeal.

violence involving respondent-mother. The criminal court sentenced respondent-father to jail time and time in a residential community adjudication program as an alternative to further incarceration. According to the DHHS, respondent-father had prior convictions for, among other things, criminal sexual conduct and use of a controlled substance. The family court authorized the petition and the DHHS placed the children into foster care.

On August 10, 2020, the trial court held an adjudicative bench trial and assumed jurisdiction over the children because of respondent-father's criminality and his inability to provide proper care of the children. Over the pendency of the case, other concerns arose about respondent-father's substance abuse, mental health, parenting, and housing. For a time, respondent-father made significant progress in his service plan with the DHHS and, at one point, he regained unsupervised overnight parenting time with the children. But in late 2022, respondent-father stopped attending his mental-health services and, in the early months of 2023, respondent-father's overnight visits ceased because his home was infested with bedbugs, the house had no water, respondent-father had a pending eviction hearing, and he allowed a man to periodically sleep in his basement even though the DHHS never determined that he was a safe person to live with the children.

Also in 2023, respondent-father's girlfriend died from a heroin overdose in respondent-father's home. The DHHS reported significant concerns about respondent-father's mental health when he threatened and behaved aggressively toward case workers. Evidence also showed that respondent-father arrived late to parenting time visits, he fell asleep during his parenting time, and he told the children it was their fault that they were placed in foster care. When the foster-care worker discovered respondent-father smoking marijuana during a visit to discuss his housing problems, she gave him a drug test that showed he used methamphetamine and amphetamine. Thereafter, and until the termination hearing, respondent-father tested positive for various drugs, including methamphetamine, amphetamine, cocaine, and fentanyl, and he also missed several drug tests.

At a hearing in August 2023, the family court found that respondent-father was not benefiting from services and he was not close to reunifying with the children. The court changed the children's permanency goal to adoption, and ordered the DHHS to file a petition to terminate respondent-father's parental rights. The DHHS filed the petition on October 11, 2023, and stated, among other claims, that respondent-father had not rectified the conditions that led to the adjudication, and it reiterated its concerns about respondent-father's positive drug screens, mental health disorders, and parenting skills. By the time of the termination hearing, the children were in foster care for nearly four years.

Following the termination hearing, the trial court found that respondent-father rectified domestic violence as a barrier to reunification, but he continued to engage in criminal conduct through his possession of controlled substances and he remained unable to provide the children with a safe and stable home. During the case, respondent-father received recommendations to address additional concerns about his mental health disorders, substance abuse, and parenting skills, and the trial court found that he received notice, hearings, and many opportunities to address those concerns, but failed to rectify them. The court ruled that it would take an unreasonable amount of time for respondent-father to overcome the barriers to reunify with the children, the

children would not be safe in respondent-father's home, he could not provide proper care and custody, and the children were at significant risk of harm if returned to his care.

The court also ruled that, although the children had a bond with respondent-father, terminating his parental rights was in their best interests. The trial court specifically found that respondent-father did not show he could care for the children, he denied using drugs when his drug tests were positive for various controlled substances, he denied responsibility for the children's placement in foster case, and he failed to comply with and benefit from his service plan. Evidence also showed that the children were doing well in foster care and the court concluded that their need for permanency, stability, and finality far outweighed any positive relationship they had with respondent-father. Accordingly, the court entered an order terminating respondent-father's parental rights, and this appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent-father argues that the trial court clearly erred by finding clear and convincing evidence to support termination of his parental rights to under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We disagree.

### A. STANDARD OF REVIEW

To terminate a respondent's parental rights, the trial court must find that the petitioner proved at least one of the statutory grounds for termination in MCL 712A.19b(3) by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). See also MCR 3.977(K). A trial court's findings of fact are clearly erroneous if, after reviewing the record, "we are definitely and firmly convinced that it made a mistake." *White*, 303 Mich App at 709-710. We also "defer to the special ability of the trial court to judge the credibility of witnesses." *Id*. at 711.

### B. LEGAL PRINCIPLES

As discussed, the family court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

\* \* \*

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

\* \* \*

-3-

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's ages.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In a termination proceeding, the petitioner must prove at least one statutory ground for termination. *In re Moss*, 301 Mich App 76, 88; 863 NW2d 182 (2013). Although the DHHS has a responsibility to make reasonable efforts to provide reunification services, there is a commensurate responsibility on the part of a parent to participate in and benefit from any offered services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Further, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *White*, 303 Mich App at 711.

## C. DISCUSSION

We agree with the trial court's ruling that clear and convincing evidence showed that respondent-father received recommendations and services to rectify the conditions that brought the children within the jurisdiction of the court, respondent-father had notice and a reasonable opportunity to rectify the conditions but did not do so, and that, considering the ages of the children, respondent-father was unlikely to rectify the conditions within a reasonable time. See MCL 712A.19b(3)(c)(*ii*).

During the years following the court's assumption of jurisdiction over the children, the DHHS identified respondent-father's mental health, parenting skills, housing, and substance abuse as barriers to reunification. Although respondent-father showed progress toward addressing the

issues, we "look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022). The record reflects that respondent-father's participation in services declined significantly during the nine months before the termination hearing. As discussed, respondent-father attended substance abuse treatment, but tested positive for methamphetamine, amphetamine, cocaine, and fentanyl, and then he denied that he used drugs. Respondent-father also stopped attending many of his mental health services and failed to maintain a safe and appropriate home for the children. The DHHS offered respondent-father numerous services to address these issues, but he failed to benefit from them, he struggled during parenting time with the children, and he lacked insight about how his conduct led to the children's placement in foster care or how he could provide care and custody for the children.

Respondent-father argues that the trial court erred by terminating his parental rights because he substantially complied with his service plan. But, as discussed, a parent must both comply with and benefit from a service plan. See *White*, 303 Mich App at 713. Although respondent-father initially participated in services, his participation waned and he did not benefit from the services enough to rectify the problems while the children waited in foster care for almost four years. The trial court did not clearly err by finding that respondent-father did not adequately participate in and benefit from the many services provided, and that respondent-father would be unable to rectify the conditions within a reasonable time considering the ages of the children. See MCL 712A.19b(3)(c)(*ii*). Further, although the court did not have lingering concerns about the domestic violence that led to respondent-father's incarceration at the beginning of the case, ample evidence showed that respondent-father failed to provide the children with safe housing, he continued to use illegal substances, and he failed to address his mental health problems despite numerous services the DHHS offered him.

The trial court also found clear and convincing evidence to terminate respondent-father's parental rights because the children were at risk of harm if returned to his care under MCL 712A.19b(3)(j). A trial court may properly consider the parent's mental health and substance abuse when deciding the likelihood of whether a child will be harmed if returned to the parent's home. See *In re AH*, 245 Mich App 77, 87; 627 NW2d 33 (2001).

Defendant cites *In re Ott*, 344 Mich App 723; 2 NW3d 120 (2022) to argue that the trial court improperly relied on his occasional drug use to terminate his parental rights. In *Ott*, the trial court suspended the respondent-mother's parenting time because she tested positive for THC. *Id*. at 725, 734-735. On appeal, this Court highlighted language in the Michigan Medical Marihuana Act and the Michigan Regulation and Taxation of Marihuana Act stating that courts could not deny a person visits with her children because she used marijuana unless her behavior created an unreasonable danger to the child. *Id*. at 741-742. The *Ott* Court ruled that the trial court should not have automatically suspended parenting time for her marijuana use without considering the respondent-mother's behavior under the statutes. *Id*. at 742.

We disagree with respondent-father that, pursuant to *Ott*, the trial court could not cite his drug use as a basis to terminate his parental rights. Respondent-father did not test positive for THC alone; his drug tests showed that he also used methamphetamine, amphetamine, cocaine, and fentanyl. Although adults of respondent-father's age may legally use THC under MCL 333.27952, the knowing and intentional possession of a controlled substance without a valid prescription is a

felony, See, e.g., MCL 333.7403(1) and (2)(*v*), and these controlled substances include cocaine, MCL 333.7214(a)(*iv*), fentanyl, MCL 333.7214(b), amphetamine, MCL 333.7214(c)(*i*), and methamphetamine, MCL 333.7214(c)(*ii*). Thus, unlike the respondent-mother in *Ott*, respondent-father was engaged in the illegal use of controlled substances.

Moreover, in this case, the trial court found clear and convincing evidence that respondent-father's behavior while on drugs created an unreasonable danger to the children. Although respondent-father received services to treat his substance abuse, he continued to use illegal drugs in the home and he allowed others to do so. Indeed, respondent-father continued to deny that drug use was a problem even after his girlfriend died of a heroin overdose while in respondent-father's home. Also, when drug tests showed that respondent-father was using controlled substances, he arrived late to parenting time, he fell asleep during his visits, he made inappropriate statements to the children, and he let a man live in his house without approval while he encouraged the children to keep this a secret. Respondent-father's drug use, coupled with his failure to address his significant mental health issues, led to his inability to properly care for the children and created a high risk that the children would be harmed if they returned to his home. See *White*, 303 Mich App at 711; *AH*, 245 Mich App at 87. Thus, on the basis of clear and convincing evidence, there was no error in the trial court's ruling that the children were at risk of harm if returned to his care under MCL 712A.19b(3)(j).[2]

## III. BEST INTERESTS

Although respondent-father does not explicitly challenge the trial court's ruling that termination of his parental rights was in the children's best interests, he emphasizes his strong bond with the children and questions whether one of the children was a viable candidate for adoption. Because these arguments relate to the trial court's determination of whether termination was in the best interests of the children, we review the trial court's ruling and again find no clear error.

### A. STANDARD OF REVIEW

Once the petitioner proves a statutory ground for termination, the trial court may not terminate parental rights unless it also finds that termination is in the best interests of the children. *Olive/Metts*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Moss*, 301 Mich App at 90. We review the trial court's ruling on the best interests of the child for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding of fact is clearly erroneous if the reviewing

---

[2] Because we hold that the trial court did not clearly err by ruling that the petitioner established grounds for termination under MCL 712A.19b(3)(c)(*ii*) and MCL 712A.19b(3)(j), and because the court need only find one statutory ground to terminate parental rights, we need not address respondent-father's claims that evidence did not support termination of his parental rights under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(g). *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Moss*, 301 Mich App at 80.

## B. LEGAL PRINCIPLES

The trial court must weigh the evidence on the whole record in determining the child's best interests. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). The court may consider many factors, including the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Mota*, 334 Mich App at 321 (quotation marks and citation omitted). The court may also consider "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. (quotation marks and citation omitted). Other best-interest considerations include the length of time the child has been in foster care or placed with relatives, the likelihood that "the child could be returned to [the parent's] home within the foreseeable future, if at all," and compliance with the case-service plan. *Frey*, 297 Mich App at 248-249. "A parent's substance-abuse history is also relevant to whether termination is in the child's best interests." *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019).

## C. DISCUSSION

The trial court acknowledged the bond between respondent-father and the children, but found that termination of his parental rights was in the best interests of the children because of respondent-father's substance abuse, his inability to parent the children appropriately, and his failure to provide a safe and stable home for the children. The trial court also found that termination was in the best interests of the children because they were thriving in their foster care placement and the foster parents expressed a willingness to adopt them. As the trial court recognized, the children were in and out of foster care for much of their lives and needed to live in a safe and healthy environment. The court also weighed the children's needs for long-term permanency, stability, and finality to conclude that termination of respondent-father's parental rights was in the best interests of the children.

We find no clear error in the trial court's best-interests determination. During the nine months before the termination hearing, respondent-father did not comply with or benefit from his service plan, he minimized his substance-abuse problems, and he denied responsibility for the children's placement in foster care. Although respondent-father acknowledged that the DHHS removed the children from his home on three previous occasions, he failed to recognize the impact his conduct had on those decisions or the trauma the children endured because of this instability. Despite initially participating in services to address his problems, respondent-father failed to show any long-term commitment to rectifying the barriers to reunify with the children. After the children spent nearly four additional years in foster care during the pendency of this case, the trial court did

not err when it found of critical importance the children's need for stability and permanency.[3] For these reasons, the trial court did not clearly err because ample evidence showed that termination was in the best interests of the children.

## IV. GUARDIANSHIP

Respondent-father argues that the trial court should have considered a guardianship instead of terminating his parental rights. We disagree.

A court may appoint a guardian to avoid termination of a respondent's parental rights if it is in the best interests of the children. *Rippy*, 330 Mich App at 359; MCL 712A.19c(2). "[T]he court may consider the best-interest factors . . . or any other factors that may be relevant under the circumstances of a particular case." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 208; 848 NW2d 107 (2014). A guardianship may be appropriate when a court does not order the DHHS to initiate termination proceedings or when termination is not in best interests of the children. *Rippy*, 330 Mich App at 359. In this case, a guardianship was not appropriate because the trial court ordered the DHHS to file the petition to terminate respondent-father's parental rights and, as discussed, abundant evidence established that termination of respondent-father's parental rights was in the best interests of the children.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Kristina Robinson Garrett

---

[3] To the extent respondent-father claims that one of the children was not adoptable, this assertion is contradicted by evidence in the record that the foster family expressed an interest in adopting that child if the court found that doing so was in the child's best interests.